**SO ORDERED: May 06, 2011.**



_____
**James K. Coachys
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHN MICHAEL WEBER, ) | Case No. 09-14488-JKC-7 |
| ) | |
| Debtor. ) | |
| _____) | |
| MARY ELLEN WEBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adv. Pro. No. 10-50030 |
| ) | |
| JOHN MICHAEL WEBER, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING PLAINTIFF MARY ELLEN WEBER'S
MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Plaintiff Mary Ellen Weber's ("Plaintiff") Motion for Summary Judgment on her Complaint Objecting to Dischargeabilty of the Debt of John Weber Pursuant to 11 U.S.C. Section 523 and for Fraud (the "Complaint"). For the reasons stated below, the Court denies the Motion.

**Facts and Procedural Background**

From July 26, 2006, through 2009, Plaintiff was under a guardianship in Marion County, Indiana. Christine W. Cooper served as the Plaintiff's guardian (the "Guardian") in the guardianship. Debtor/Defendant John Michael Weber ("Defendant") is Plaintiff's son.

In January of 2007, the Guardian filed a Verified Amended Petition for Intermeddling and Petition for Temporary Restraining Order or Immediate Preliminary Injunction (the "Petition") against Defendant, Amy G. Weber and J.M. Weber Enterprises, LLC (together, the "Respondents"). On December 22, 2008, the parties entered into a Settlement Agreement and Mutual Release (the "Settlement Agreement"), whereby the Respondents agreed to pay Plaintiff's estate $165,000.00, or $170,000.00 if they obtained a certain tax refund, plus interest. *Settlement Agreement* at Section 1. Pursuant to the Settlement Agreement, Defendant also admitted that he obtained loans from Plaintiff "by fraud, false pretenses and/or false representations . . . ." *Settlement Agreement* at ¶ 1.6.1.1. He further agreed that the debt that arose from such fraud would be excepted from discharge in the event he filed for bankruptcy protection. *Id.*

Pursuant to the Settlement Agreement, the parties also executed an Agreed Judgment (the "Agreed Judgment") on the condition that it would not be filed with the state court or tendered for court approval unless and until there was default under the payment schedule set forth in the Settlement Agreement. *Settlement Agreement* at Section 2.[1] In the meantime, it was to be held by

---

[1] The Settlement Agreement also provided that "[s]o long as the Respondents are not in default as provided in this Agreement, the Guardian and her counsel shall not disclose to any other person or entity, excepting only the Court, the existence of the Judgment or this Agreement. The Parties agree that the Agreement shall be filed with the Court on light green paper indicating that the Agreement is confidential and not available for public access." Notwithstanding this provision, neither Plaintiff nor Defendant have taken any steps to limit public access to the Settlement Agreement or Agreed Judgment in this proceeding, not withstanding the fact that two of the Respondents are not parties to this proceeding.

2

counsel for the Guardian, Robert W. York. The Agreed Judgment, in turn, provided for a judgment in favor of Plaintiff and against Defendant, among others, in the amount of $337,000. Pursuant to the Agreed Judgment, Defendant "admit[ted] the allegations of the Guardian set forth in the Petition . . . ."

On the same day it was executed by the parties, the Settlement Agreement was submitted, along with a proposed order, to the state court for approval. Attached to the Settlement Agreement was a copy of the executed Agreed Judgment. Notwithstanding the terms of the Settlement Agreement, the state court signed and approved not only the Settlement Agreement, but the Agreed Judgment as well. None of the parties to the Settlement Agreement asked the state court to vacate the Agreed Judgment as being prematurely entered.

Defendant commenced a voluntary Chapter 7 bankruptcy case on September 30, 2009. As of that date, a default had not yet occurred under the payment schedule set forth in the Settlement Agreement. In fact, such default did not occur until December of 2010.

## Discussion and Decision

Plaintiff timely commenced an adversary proceeding seeking a determination that Defendant's indebtedness to her is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(4). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

As explained more fully below, Plaintiff argues that she is entitled to summary judgment based on the alleged preclusive effect of the Settlement Agreement and Agreed Judgment. Under Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). With a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material question, then the court must enter summary judgment against it. *Waldridge v. American Hoechst Corp*., 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 585-87 (1986)).

On summary judgment, Plaintiff argues in relevant part:

During the [state court] litigation of this matter, the Defendant admitted to a series of allegations that established a pattern of conduct that [t]he Court found to be fraud. In this Settlement Agreement which was subsequently approved and entered as a judgment of the Court, the parties attempted to establish that the underlying debt was non-dischargeable in any potential future bankruptcy action. Plaintiff does not assert that that portion of the settlement agreement is enforceable; rather, the Plaintiff asserts simply that the underlying facts necessary to prove non-dischargeability in this adversary proceeding have already been fully litigated, that collateral estoppel applies in this case, precluding any further review of the state court's determination of fraud and as result, the undisputed facts are sufficient to establish that the debt herein is non-dischargeable.

*Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment* at 1. As explained below, the Court disagrees with Plaintiff's argument.

A state court judgment is entitled to full faith and credit in bankruptcy proceedings. 28 U.S.C. § 1738; *Matter of Bulic,* 997 F.2d 299, 304 (7th Cir.1993). Thus, in applying the principles

of *res judicata*, this Court looks to the substantive law of the state that issued the judgment, giving the state court judgment the same preclusive effect it would receive in the forum state. *See Scarborough v. Fischer (In re Scarborough)*, 171 F.3d 638, 641 (8th Cir. 1999); *Bicknell v. Stanley*, 118 B.R. 652 (S.D.Ind.1990).[2] There are two categories of *res judicata*: claim preclusion and issue preclusion. Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies. *Northern Indiana Pub. Serv. Co. v. Sharp*, 732 N.E.2d 848, 854 (Ind. Ct. App. 2000). Issue preclusion, also known as collateral estoppel, bars the subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id*. Where issue preclusion applies, the previous judgment is conclusive only regarding those issues actually litigated and determined therein. *Id.*

Collateral estoppel can be used either offensively or defensively. Offensive collateral

---

[2] In her reply brief, Plaintiff correctly points out Defendant's misplaced reliance on *Klingman v. Levinson*, 831 F.2d 1992 (7th Cir.1987) for the applicable collateral estoppel standard. As explained in *Bicknell*, the *Klingman* court, like many other courts, erroneously applied a federal standard for collateral estoppel when determining the preclusive effect of a state-court judgment. As stated above, when determining the preclusive effect of a state court judgment, the court must apply the substantive law of the state that issued in the judgment.

Plaintiff then cites to *In re Busick*, 264 B.R. 518, 522 (Bankr.N.D.2001) for an articulation of Indiana's standard for collateral estoppel. According to Busick, Indiana relies on the Restatement (Second) of Judgments for its standard, that standard being that "[t]o establish collateral estoppel under Indiana law, a party must show: (1) the issue in the current action is identical to the issue in the first action; (2) the issue was actually litigated; (3) the resolution of the issue was necessary to judgment in the first action; and (4) a final judgment resolved the issue in the first action."

*Busick* relies on another Northern District of Indiana case, *In re Staggs*, 178 B.R. 767 (Bankr.N.D.Ind.1994), which, in turn, cites the Indiana case of *Tofany v. N.B.S. Imaging Sys. Inc.,* 616 N.E.2d 1034 (Ind.1993) for the proposition that "Indiana has essentially adopted and continues to follow the Restatement's traditional principles of collateral estoppel." *Staggs*, 178 B.R. at 774. With all due respect to the Bankruptcy Court for the Northern District of Indiana, the Court disagrees with its interpretation of *Tofany's* holding. As explained in more detail below–in the body of this Order–*Tofany* instead adopted a two-prong standard that is arguably different from the Restatement's "traditional" standard. *Tofany*, 616 N.E.2d at 1038. In the Court's view, then, neither Plaintiff nor Defendant has correctly articulated Indiana's standard for collateral estoppel.

5

estoppel involves a situation where the plaintiff seeks to foreclose the defendant from litigating an issue the defendant had previously litigated unsuccessfully in an action with another party. *Bartle v. Health Quest Realty VII,* 768 N.E.2d 912, 917 (Ind.Ct.App.2002), *trans. denied*. Defensive collateral estoppel involves a situation where a defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost. *Id*. The present case involves the use of offensive collateral estoppel, as Plaintiffs seek to prevent Defendant from relitigating whether he committed actual fraud for purposes of § 523(a)(2)(A).

The Indiana Supreme Court has adopted a two-prong test for the offensive use of collateral estoppel: (1) whether the party in the prior action had a full and fair opportunity to litigate the issue; and (2) whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel. *Tofany,* 616 N.E.2d at 1038. The offensive use of collateral estoppel has traditionally been viewed as somewhat more problematic than the defensive use of collateral estoppel. In *Tofany,* the Indiana Supreme Court discussed the factors to be considered in a court's determination of whether offensive collateral estoppel should be utilized:

> The trial court may consider privity, the defendant's incentive to litigate the prior action, the defendant's ability to defend the prior action, and the ability of the plaintiff to have joined the prior action. When considering the defendant's incentive to litigate, the trial court may consider the interest at stake for the defendant as well as how the defendant perceived this interest. For example, did the defendant have its most experienced litigator in the prior action or, instead, did the defendant rely on a less experienced litigator? Similarly, the trial court may consider whether the forum in which the action was defended allowed the defendant to participate in the full range of discovery. For example, was the forum inconvenient thus preventing the defendant from presenting witnesses or from taking depositions.

*Id.* at 1038-39. The Court added that these factors are not exhaustive; rather, they merely provide the framework for a court to utilize in its determinations. *Id.* at 1038.

Per the Agreed Judgment, Defendant "admitted" the factual allegations of fraud set forth by

the Guardian in the Petition. Presumably, those allegations provide the facts that Plaintiff now argues were conclusively determined by the Agreed Judgment. The Court would agree with that argument except for the undisputed fact, which Plaintiff seemingly ignores in her supporting briefs, that the Agreed Judgment appears to have been approved by the state court in error.

The terms of the Settlement Agreement are clear: The Agreed Judgment was not to be filed with the state court and tendered for approval unless and until their was a default. The undisputed facts further establish that no default occurred until after Defendant commenced this bankruptcy case. Thus, the Court cannot avoid the conclusion that the Agreed Judgment, while undoubtedly signed by the state court, was entered in error. The Court concludes that it would be unfair to permit the Plaintiff to use collateral estoppel under these circumstances.

At most, then, the Agreed Judgment amounts merely to a contract[3] between the parties wherein Defendant admitted to the facts set forth in the Guardian's Petition–facts which Plaintiff now argues support a judgment of nondischargeability. In the Court's opinion, those admissions do not constitute judicial admissions. Therefore, while they do have evidentiary significance, they are not conclusive as to nondischargeability. As the Seventh Circuit instructs, "a statement made in one lawsuit cannot be a judicial admission in another. It can be *evidence* in the other lawsuit, but no more." *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1185 (7th Cir.1996). In opposition to Plaintiff's summary judgment, Defendant has offered an Affidavit which specifically refutes the allegations of fraud set forth by the Guardian in her Petition. Thus, there are material facts in

---

[3] The Indiana Court of Appeals has stated that "'a consent judgment is both contractual, in that it is an agreement between the parties settling the underlying dispute, and an entry of judgment by the court with all that it means in committing the force of society to implement the judgment in its courts.'" *Stengler v. LLC Corp.*, 819 N.E.2d 480, 482 (quoting *Ingoglia v. The Fogelson Cos., Inc.*, 530 N.E.2d 1190, 1199 (Ind.Ct.App.1988)).

7

dispute that preclude the Court from granting summary judgment in favor of Plaintiff.

That leaves the Settlement Agreement itself. In it, Defendant:

> [A]grees that he obtained the Loans from Mary Ellen Weber by fraud, false pretenses and/or false representations . . . . John M. Weber jointly and severally agrees that this Settlement Agreement and the representations herein may be used and admitted in any adversary proceeding which may be brought against him in the event a bankruptcy proceeding is filed against or on behalf of John M. Weber. It is the intent of John M. Weber to be estopped from denying any allegations that his actions would be non-dischargeable as provided by U.S.C. § 523(a)(2) and (4), and any other provision of the U.S. Bankruptcy statutes identifying debts that are non-dischargeable.

In *Klingman*, the Seventh Circuit made clear "for public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy. . . ." *Klingman*, 831 F.2d at 1296 n.3. It appears that Plaintiff conceded this point in her supporting summary judgment brief and is not attempting to enforce the Settlement Agreement in this regard.

*Klingman* also makes clear that a debtor may "stipulate to the underlying facts that the bankruptcy court must examine to determine whether a debt is dischargeable." *Id*. While Defendant agreed that he committed fraud per the Settlement Agreement, he did not stipulate to the underlying facts of that fraud. Even if he had, the Court would be inclined to treat the Settlement Agreement as nothing more than an evidentiary admission, not as a judicial admission. Thus, it would not be conclusive of the matters at issue in this proceeding.

## Conclusion

Based on the foregoing, the Court cannot conclude that the Agreed Judgment, which was approved by the state court prematurely, is entitled to preclusive effect under Indiana's standard for offensive collateral estoppel. The admissions made by Defendant in both the Agreement Judgment and Settlement Agreement are not judicial admissions and are not conclusive of the material facts

at issue in this proceeding, although they do have evidentiary support. In light of Defendant's Affidavit, the Court must conclude that there are genuine issues of material fact and that Plaintiff is, therefore, not entitled to judgment as a matter of law. Accordingly, the Court denies Plaintiff's Motion for Summary Judgment.

###

Distribution:

Edward A.B. Castaldo
Gary Lynn Hostetler
Bradley J. Buchheit
Christopher M. Trapp
James T. Young